UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JONATHAN STEVENS,        )
        )
        Plaintiff,      )
        )
        vs.        )      No. 2:15-cv-00119-LJM-MJD
        )
TOWN OF WEST TERRE HAUTE,      )
INDIANA,        )
        )
        Defendant.   )

## ORDER ON DEFENDANT TOWN OF WEST TERRE HAUTE'S
## MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Town of West Terre Haute's ("West Terre Haute") Motion for Summary Judgment on the claims brought against it by Plaintiff Jonathan Stevens. Dkt. 35. Stevens alleges that West Terre Haute discriminated against him when it chose not to hire him because of his race in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

For the reasons set forth below, the Court **DENIES** Defendant West Terre Haute's Motion for Summary Judgment.

## I.    BACKGROUND

### A.  JONATAHAN STEVENS

Jonathan Stevens was employed as an unpaid reserve police officer for the West Terre Haute Police Department ("Department") between September 2013 and March 2014. Complaint, Dkt. 1, ¶ 4. During that time, Stevens twice applied to be a full-time, paid police officer, but was not chosen. *Id.* Stevens, the only African-American working

1

at the Department, alleges that this was due to his race. *Id.*, ¶¶ 4-6. Ian Redman and Ryan Martin, both Caucasians, received the full-time positions ahead of Stevens. Dkt. 37-1, Lark Dep 26:8-12; Dkt. 36-2, Melton Dep. 52:14-18. Stevens was eventually hired as a paid merit officer based on a recommendation by Chief Scott Melton and unanimous approval from the West Terre Haute Town Council (the "Council"). Dkt. 36-4, McClain Dep. 48:9-13.

### B. LARK TESTIMONY

Donald Lark was the Chief of Police for West Terre Haute from September 2010 through November 2013. Lark Dep. 5:18-6:2. Lark testified that the police chief used to have the final say in the hiring of police officers. *Id.* at 15:4-12. Lark stated that this all changed following the hiring of African-American reserve officer Herman Moothery. *Id.* at 14:5-15:18. Scott McClain, who served on the Council, approached Lark about the hiring of Moothery and stated that he received numerous phone calls from people in town with concerns about having a "n****r" on the police force. *Id.* at 15:14-16:6. McClain asked Lark, "When did we hire a n****r[?]" *Id.* at 16:11-14. Lark, who had developed a friendship with McClain, indicated that McClain was racist and disliked African-Americans. *Id.* at 16:16-22; 18:11-13; 19:19-21; 20:2-7. Following Lark's appointment as chief, Moothery was terminated for medical reasons. *Id.* at 21:9-19.

After the hiring of Stevens' reserve class, McClain expressed concern that he was not notified of the class's hiring. *Id.* at 22:6-12. Subsequently, the Council would not allow the Department to hire any reserve officers until the Council met each individual in person. *Id.* at 22:13-23:7.

During Lark's tenure, he only hired one merit officer, Ian Redman. *Id.* at 26:8-15. Lark's hiring decision came down to Stevens or Redman. *Id.* at 30:6-14. Lark believed

that Stevens' experience as a paramedic made him a better candidate than Redman. *Id.* at 39:22-40:5. Lark had a discussion over the potential applicants with Assistant Chief Scott Melton and Council members McClain and Sheila Boatman. *Id.* at 30:22-32:18. McClain told Lark, "Before we go any further, I want to tell you right now, don't even think about hiring Jonathan Stevens. We will not consider it." *Id.* at 31:6-10. When Lark asked why they could not hire Stevens, Boatman stated that "[h]is kind does not belong in this town." *Id.* at 31:17-18. McClain then stated that "[Stevens] does not belong here." *Id.* at 31:20. McClain refused to discuss hiring Stevens and inquired as to other candidates, at which point Lark indicated his second choice would be Ian Redmond. *Id.* at 32:3-11. McClain decided that they needed to reopen the application process, which they did. *Id.* at 32:12-18.

A couple weeks later, Lark and Melton called McClain and Boatman to discuss the hiring process. *Id.* at 33:1-9. Lark did not believe that any of the new applicants were as qualified as those already submitted. *Id.* at 33:10-14. At this point, McClain stated that they would simply not hire anyone. *Id.* at 33:15-19. Boatman indicated that she had a candidate in mind, and Melton told her that she should have the individual put in an application. *Id.* at 33:21-25.

Lark stated that McClain and Boatman thought the line had disconnected, but he and Melton stayed on the phone and heard a private conversation between McClain and Boatman. *Id.* at 34:2-12. At that point, Boatman stated, "No f*****g way in hell are we hiring Jonathan Stevens." *Id.* at 34:13-14. McClain responded, "No way, not going to happen." *Id.* at 34:14-15.

Sometime after the phone conversation, West Terre Haute experienced a flood. *Id.* at 37:12-18. Lark called McClain and told him that they were "running crazy trying to help people around here." *Id.* at 38:9. McClain responded, "Go ahead and get ahold of Ian Redman. Get him on the books … Tell him to come in and fill out the paperwork so we can get somebody on the shift and move past this whole thing." *Id.* at 38:11-15. Lark asked if McClain was telling him that he had to hire Ian Redman for the position and McClain responded, "Yes, hire Ian Redman." *Id.* at 38:19-21. When Lark asked if he had any other choice, McClain replied, "Not if you want to fill that position." *Id.* at 38:22-23. Immediately after that conversation took place, Lark called Redman to offer him the position; Redman accepted. *Id.* at 38:25-39:8.

On September 5, 2013, Lark submitted a memorandum on Redman's behalf, which stated that "Assistant Chief Melton and I are in agreement that the person who would make the best hire is Reserve Officer Ian Redman. Officer Redman has been with the Town of West Terre Haute Police Department for over two years and has a stellar record and unquestioned work ethic." Dkt. 36-1. It went on to state that Redman "has shown a consistent willingness to go above and beyond the course of normal duty by constantly donating numerous hours of his time to serve the citizens of this town … and has always conducted himself in a professional manner which is beyond reproach." *Id.* The memorandum concluded that "Officer Redman would be an asset to the Town of West Terre Haute if hired full-time." *Id.*

Lark also testified that at a meeting between the Department and the Council, Stevens inquired into the status of an investigation of a water works employee that allegedly made racist remarks. Lark Dep. 49:1-16. McClain stated that he did not know

what Stevens was referring to. *Id.* at 49:17-19. After Stevens persisted, McClain "stood up and stuck his finger right in Jonathan's face. He called him a boy and told him he was lucky he still has a job so he better sit down and shut the f**k up." *Id.* at 50:8-8.

### C. BOATMAN, MCCLAIN, AND MELTON TESTIMONY

West Terre Haute disputes the factual scenario described in Lark's deposition. The Defendant cites to the deposition testimony of Boatman, McClain, and Melton to paint a different picture.

#### 1. Scott Melton Testimony

Melton was a lieutenant with the Department when Stevens became a reserve officer; Melton became Assistant Chief in late 2011 or early 2012. Melton Dep. at 15:19-22; 17:13-18. Melton denied that Lark informed him that he wanted to hire Stevens instead of Redman. *Id.* at 49:21-24. Melton did note, however, that "[Lark] did report to me, I think this was after the fact, but he did say that he heard Sheila say, Sheila Boatman, that [Stevens'] kind would not be hired. I do recall Don Lark telling me about that at some point. I'm not sure when that was." *Id.* at 50:9-14. Melton stated Redman was the best fit for the job, but could not recall whether Lark shared that same opinion. *Id.* at 40:22-41:6. Melton testified as to an August 27, 2013, email he received from Lark regarding the filling of the new position, which stated "I think you and I are on the same page with hiring someone from the reserve pool. … I am not clear if you and I are on the same page with WHO we should hire from the reserve pool." *Id.* at 44:12-20; *Id.* Ex. 6. Melton was unsure as to whom Lark was referring to in the email. *Id.* at 44:21-45:5.

By the time Stevens filled out his second application for employment, Melton had been elevated to Chief of the Department and modified the standards by which full-time officers were hired. *Id.* at 50:21-51:5; *see* Dkt. 36-3. There were four total applicants that

applied for a part-time paid patrolman position, including Stevens. Dkt. 36-3. Ryan Martin scored the highest amongst the applicants and was recommended for the position by Melton. Dkt. 36-3.

Following Melton's hiring of Martin, Stevens was hired for a part-time position. Melton Dep. 55:13-17; 80:18-20. During the application process, Stevens tied with another applicant for the top score but was recommended for the position due to his seniority. *Id.* at 56:7-21. He was unanimously approved by the Council, which included McClain, Boatman, and Nate Bartlett. *Id.* at 87:16-23; McClain Dep. 48:9-13. After Stevens was hired as a part-time officer, then clerk-treasurer Jim Mann approached Melton and told him that he did not feel that it was fair that Stevens was working the same number of hours as a full-time officer. *Id.* at 81:13-82:16. Mann re-appropriated money from West Terre Haute's Economic Development Incentive Tax fund to its general fund to pay for Stevens to be a full-time officer with the Department. *Id.* at 82:19-83:4.

### 2. Scott McClain Testimony

Scott McClain was the Council president for West Terre Haute from approximately 2008 to 2015. McClain Dep. 7:1-14. He stated that the Council did not micromanage the Department and that the Department was ultimately controlled by the police chief; this included management and selection of personnel. *Id.* at 11:3-10; 11:18-22; 12:3-6. McClain testified that the Council always follows the recommendation submitted by the police chief in hiring police personnel. *Id.* at 15:10-11. McClain further testified that Lark never told him he wanted Stevens to receive the paid position. *Id.* at 17:16-23.

### 3. Sheila Boatman Testimony

Sheila Boatman was a member of the Council in August 2013. Dkt. 36-5, Boatman Dep. 8:21-25. Boatman denied stating to anyone that she did not want Stevens' "kind" to

work for the Department. *Id.* at 22:16-22. She also denied telling Lark that she did not want to have Stevens become a full-time police officer for the Department. *Id.* at 23:12-24. She further testified that McClain never stated in her presence that he did not want Stevens to become a full-time police officer for the Department. *Id.* at 23:17-19. Boatman claims that she and McClain never spoke about who would be the most appropriate candidate to fill the vacancy in the Department when Stevens first applied. *Id.* at 24:10-16. Boatman testified that she never had any conversations relating to the hiring for the position until it was presented to her by Lark. *Id.* at 25:12-17. Boatman also stated that she never dissuaded Lark from recommending that Stevens be hired. *Id.* at 38:13-15. Like McClain, she indicated that the Council would always take the recommendation of the police chief in hiring police officers. *Id.* at 27:23-28:8. When Melton did recommend Stevens to be hired, none of the Council members expressed any hesitation in approving him. *Id.* at 38:10-12.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides in relevant part: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Ft. Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm,* 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson,* 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.,* 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is

sufficient for the moving party to direct the Court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 201 & n. 3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996).

## III.    DISCUSSION

Title VII makes it unlawful for an employer "to fail or refuse to hire … or otherwise to discriminate against any individual … because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). "[T]he obligation imposed by Title VII is to provide an equal opportunity for *each* applicant regardless of race." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579 (1978). Stevens has alleged that West Terre Haute chose not to hire him, on two separate occasions, because he is African-American. Dkt. 1, ¶ 4.

To establish a claim for employment discrimination, a plaintiff must set forth evidence that would "permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case itself." *Id.*

If Lark's testimony is believed, as is appropriate for a summary judgment motion, there is ample evidence to conclude that Boatman and McClain refused to hire Stevens because he was African-American. According to Lark, McClain did not like African-

Americans and asked when West Terre Haute "hire[d] a n****r?"  Lark Dep. 16:11-14.

McClain was upset that he was not notified of the hiring of Stevens' reserve class and

thereafter became more involved in the hiring of police officers.  *Id.* at 22:6-23:7.  More

tellingly, Lark insists that his selection was Stevens, but that Boatman and McClain would

not allow it.  *Id.* at 39:22-40:5.  Boatman even stated that "[h]is kind" – apparently referring

to Stevens – do not belong in West Terre Haute.  *Id.* at 31:17-18.  Boatman reiterated "No

f*****g" way in hell are we hiring Jonathan Stevens.  *Id.* at 34:13-14.  In the end, McClain

told Lark to hire Redman.  *Id.* at 36:22.

Assuming these facts as true, a reasonable factfinder could conclude that Stevens

was not hired on the basis of his race.  S*ee Vergara v. Yonkers Pub. Sch.*, 386 F. Supp.

2d 377, 383 (S.D.N.Y. 2005) ("Although the statement 'her kind' could have several

connotations, the Court finds that it is a reasonable inference that the statement could

refer to her racial, … identity.").  Given McClain's dislike of African-Americans and

previous use of racial slurs, coupled with McClain and Boatman's alleged comments

regarding Stevens' potential employment, Lark's testimony sets forth sufficient evidence

to demonstrate that Stevens could have been passed over on account of his race.  And,

although isolated comments have been found to be insufficient to prove discriminatory

intent, *see Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006), "a particular

remark can provide an inference of discrimination when the remark was (1) made by the

decision maker, (2) around the time of the decision, and (3) in reference to the adverse

employment action."  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir.

2007).  The remarks about Stevens' employment to which Lark testified sufficiently

establish each of these elements to support an inference of discrimination.

West Terre Haute solely relies on the burden-shifting method set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, (1973). This evidentiary method was developed because "'smoking gun' evidence of discriminatory intent is hard to come by." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). In this case, however, Lark's testimony is the equivalent of a smoking gun. Lark indicated that West Terre Haute refused to hire Stevens on account of his race, which creates a triable issue for the jury. Accordingly, the Court need not address West Terre Haute's burden-shifting argument.

West Terre Haute asserts two more defenses, neither of which provides it relief. It first claims that "[i]f the council members wanted to discriminate against [Stevens] based on his race, they did not have to hire him at all – yet, they did hire him." Dkt. 36 at 14. Defendant cites to *E.E.OC. v. Our Lady of Resurrection Med. Ctr.*, which stated that the "same hirer/firer inference has strong presumptive value." 77 F.3d 145, 152 (7th Cir. 1996). But Stevens is not claiming that he was wrongfully terminated, his claims are that on two separate occasions he was looked over for a position that he was qualified for because of his race. Dkt. 1, ¶ 4. These claims, if true, resulted in Stevens working as a non-paid reserve officer for a longer duration than would have been necessary if he was not African-American. The fact that West Terre Haute eventually hired him is an inquiry for damages, not liability.

West Terre Haute's final argument is that Stevens has failed to challenge McClain, Boatman, and Melton's testimony, which in turn must be deemed credible and summary judgment rendered in its favor. Dkt. 38 at 6. West Terre Haute argues that the Court must assume that a witness is credible, and that credibility questions may preclude

summary judgment only when the non-movant challenges the movant's witnesses' credibility. *Id.* (citing *Captain v. ARS Nat. Servs.*, 636 F. Supp. 2d 791, 795 (S.D. Ind. 2009). This assertion is confusing at best and belies Lark's testimony, which offers a markedly different account of what occurred during the hiring process from the one proffered by McClain, Boatman, and Melton. Even if their testimony was credible, it conflicts with Lark's, which creates a material issue of fact for the jury to decide.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Town of West Terre Haute's Motion for Summary Judgment.

IT IS SO ORDERED THIS 19th day of January, 2017.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Eric A. Frey
FREY LAW FIRM
freylaw@aol.com

Daniel Mark Witte
TRAVELERS STAFF COUNSEL OFFICE
dwitte@travelers.com

Julie Joy Havenith
TRAVELERS STAFF COUNSEL OFFICE
jhavenit@travelers.com